IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JEREMY CAMERON, )
 )
       Plaintiff, )   Case No. 04-272-KI
 )
vs. )   OPINION
 )
T-MOBILE USA INC., )
 )
       Defendant. )

    William D. Stark
    876 Welcome Way S. E., Suite 200
    Salem, Oregon 97302

        Attorney for Plaintiff

    Paula A. Barran
    Todd A. Hanchett
    Barran Liebman LLP
    601 S. W. Second Avenue, Suite 2300
    Portland, Oregon 97204-3159

        Attorneys for Defendant

Page 1 - OPINION

KING, Judge:

Plaintiff Jeremy Cameron brings an action against his former employer, T-Mobile USA, Inc. ("T-Mobile"), for common law wrongful discharge and violation of the Oregon Family Leave Act ("OFLA"). Plaintiff alleges that defendant wrongfully terminated his employment because he had absences from work in order to care for his sick children. Before the court is T-Mobile's motion for summary judgment (#64).

## BACKGROUND

I previously denied plaintiff's motion for summary judgment, finding that there were issues of fact for trial, in an Opinion and Order issued December 20, 2004. Cameron v. T-Mobile, CV 04-272, December 20, 2004, Opinion and Order at 6-7 ("2004 Opinion"). On March 22, 2005, I granted T-Mobile's request for extension of deadlines to allow it to pursue evidence related to the veracity of plaintiff's claims that his absences were related to sick children, and to file a dispositive motion if appropriate.[1]

T-Mobile subsequently filed a motion for summary judgment on plaintiff's statutory and common law claims. The parties present no additional facts in this second round of summary judgment briefing. However, I reiterate them here for ease of reference.

T-Mobile hired plaintiff as a Customer Care Representative in October 2001 to work in its Salem Call Center. Plaintiff's wife at that time, Katrina Cameron, also worked at T-Mobile's Salem Call Center.

---

[1] I note that T-Mobile makes legal arguments in its motion for summary judgment beyond those it implied to the court it would make when it requested an extension of the dispositive motions deadline. However, I also note that plaintiff does not explicitly object to T-Mobile's motion on this ground.

In September 2002, T-Mobile performed a mandatory shift swap in which all representatives' shifts and supervisors were changed. Prior to the shift swap, plaintiff and his wife worked different shifts. The shift swap caused their work schedules to overlap. This presented a child care issue for plaintiff and his wife.

Plaintiff submitted a Request for Work Schedule Accommodation. His request was granted and he was permitted to work until 3:00 pm, and his wife was allowed to begin working at 3:30 pm.

T-Mobile's 2002 attendance policy was based on a rolling four-month calendar under which attendance was tracked by "occurrences." Unexcused absences were counted as one occurrence. Late arrivals and early departures were counted as one half of an occurrence. The policy provided for different "counselings" and verbal and written warnings as the points accumulated. The sixth occurrence was to result in further disciplinary action up to and including termination. An absence did not count as an occurrence if an employee had accrued time in his or her "sick bank" to cover the absence and the employee provided notice of the absence at least 30 minutes prior to the scheduled shift.

T-Mobile issued a new attendance policy in January 2003, which varied from the 2002 policy. The new policy did not specifically assess points, but rather tracked "unplanned absences." Under the new policy, an unplanned absence was not excused simply because the employee had time in his or her sick bank. Additionally, the way in which late arrivals and early departures were "scored" changed. The policy also changed the discipline steps. It provided that the fourth unplanned absence resulted in termination. The policy also changed the "lookback" period to six months.

Plaintiff had tardiness and attendance problems at T-Mobile, but he contends that many absences were due to his need to care for a sick child. Plaintiff contends that he did not know he had statutory rights at the time he was employed with T-Mobile, but that he informed defendant of his need to care for a sick child on several occasions. T-Mobile disputes the real reasons for plaintiff's absences. It also disputes that plaintiff reported to T-Mobile that some of the absences were needed to care for a sick child or reported enough information to cause T-Mobile to do further inquiry as to the reasons for the absences.

According to T-Mobile, plaintiff was absent only on four occasions that he reported were due to sick children: 1/11/02, 2/5/02, 3/20/02 and 7/16/02. T-Mobile contends that all other absences were for stated reasons other than sick children, and largely due to plaintiff's own alleged illnesses, which were frequent. T-Mobile reports that in 2002 alone, plaintiff called in sick or left early 20 times for the stated reason that he was sick.

Plaintiff contends, however, that there were numerous other absences attributable to his sick children. He asserts that he was absent either 9/7/02 or 9/19/02, 11/8/02 and 11/9/02 to care for a sick child. He also asserts that he left work early on 9/23/02 to care for a sick child.

T-Mobile's records reflect that plaintiff's wife worked her evening shifts on several of the days plaintiff contends he needed to miss his day-shift because his wife could not care for the kids. Plaintiff's wife's testimony contradicts plaintiff's testimony as to the reasons for many of his absences.

On February 1, 2003, plaintiff sent an email requesting to take a vacation day on either 2/6/03 or 2/7/03. All available time slots for those days were filled and his request was denied.

He then asked for a vacation day on 2/10/03, 2/13/03 or 2/14/03. His request was granted and he was scheduled for a vacation day on 2/10/03.

Plaintiff called in sick on 2/6 and 2/7, the same two days he had asked to have as vacation days. When he called in sick he was told that there may be some issues with respect to his unplanned absences and that this could lead to termination. Plaintiff was terminated on 2/13/03 when he returned to work.

Following the issuance of the 2004 Opinion, the parties entered into a Pretrial Order amending the pleadings.[2] In that Pretrial Order, plaintiff clarifies his claims based on the OFLA as follows:

> Count 1: T-Mobile violated Oregon Family Leave law because it counted one or more absences due to the need to care for a sick child as part of the decision to terminate plaintiff's employment, contrary to ORS 659A.150 - 659A.153.
>
> Count 2: T-Mobile violated Oregon Family Leave law because it terminated the plaintiff in retaliation for plaintiff having objected to discipline for absences due to the need to care for his sick children.
>
> Count 3: T-Mobile violated Oregon Family Leave law because it failed to inform and train its managers and employees on the requirements of Oregon Family Leave laws and regulations and provided contradictory or misleading information on the rights of employees under Oregon Family Leave law.

Pretrial Order, Claim 1, ¶ 9.

Plaintiff's common law wrongful discharge claims track the alleged statutory violations set forth above. In addition, plaintiff asserts that "Plaintiff's discharge was wrongful as it was against public policy that provides parents with the right to care for a sick child without adverse

---

[2]Although I have not yet signed the Pretrial Order, both parties signed it in January of 2005. Since the Pretrial Order presents plaintiff's claims more clearly than does his Complaint, I will refer to it for purposes of resolving T-Mobile's motion for summary judgment.

employment actions and/or in violation of plaintiff's employment related right to leave to care for a sick child." Pretrial Order, Claim 2, ¶ 11.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.  Violations of the Oregon Family Leave Act

In the 2004 Opinion, I determined that to the extent plaintiff's statutory claim was based on a theory of retaliation, I found questions remained as to whether plaintiff could be "deemed to have engaged in protected activity and whether there is a causal link to plaintiff's termination." 2004 Opinion, at 7. Furthermore, to the extent that plaintiff relied on the legal theory set forth in Bachelder v. American West Airlines, Inc., 259 F.3d 1112 (9th Cir. 2001) ("Bachelder"), I found there remained issues of fact as to whether plaintiff was in fact entitled to the leave he claimed. Id.

I begin with plaintiff's first statutory claim, that T-Mobile is liable because plaintiff took OFLA-protected leave, and used it against plaintiff in the termination decision. Plaintiff cites

ORS 659A.150 to 659A.153 in the Pretrial Order as the legal basis for this first statutory claim. However, neither of these provisions afford plaintiff a cause of action for T-Mobile's alleged termination due to plaintiff's taking family leave; ORS 659A.150 contains the definitions for terms used in the OFLA while ORS 659A.153 identifies which employers must comply with the Act. Accordingly, I grant T-Mobile's motion for summary judgment on plaintiff's interference claim.

I turn now to plaintiff's retaliation claim. I first address T-Mobile's query as to whether there is a retaliation theory available in federal court. Although the OFLA itself does not provide for a retaliation claim, the Oregon Court of Appeals recently held that when read together with an administrative rule, the OFLA provides a civil remedy for retaliatory discharge for invoking the act. Yeager, 195 Or. App. at 139.

As T-Mobile points out, Judge Hubel recently reassessed the validity of his opinion in Denny that the OFLA does not allow for a retaliation claim, in light of Oregon Court of Appeals' holding to the contrary in Yeager. Stewart v. Sears, Roebuck and Co., CV 04-428-HU, Findings of Fact (D. Or. April 15, 2005) ("Stewart"). Judge Hubel recommended the conclusion that the OFLA does not have a retaliation cause of action because the administrative rule expands the scope of protection given by the statute. I am only required to follow a decision of the Oregon Supreme Court in interpreting questions of state law. Vestar Dev. II, LLC v. General Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001). Therefore, because I find Judge Hubel's analysis persuasive, I adopt the reasoning in Stewart and decline to follow Yeager. My previous reliance on Yeager in this case was misplaced. Therefore, I grant T-Mobile's motion for summary judgment on plaintiff's claim that T-Mobile retaliated against him in violation of the OFLA.

Finally, with respect to count three, plaintiff asserts in the Pretrial Order that T-Mobile violated the OFLA because it failed to inform and train its managers and employees on the requirements of the OFLA. Defendant contends that such a claim is not cognizable under the OFLA.

Other than the OFLA provision that requires that an employer post notice of the requirements of the OFLA in "every establishment of the employer in which employees are employed," ORS 659A.180, plaintiff points to no statutory provision requiring employers to inform and train its managers and employees about OFLA requirements. Pursuant to ORS 659A.885(1) and (2), plaintiff may bring a cause of action for T-Mobile's failure to post notice of the requirements of the OFLA.

Thus, I construe plaintiff's claim as an allegation that T-Mobile failed to post information about the OFLA, and find that he has stated a cause of action on this basis only. While plaintiff offers no new argument in support of this claim, he argued in his initial motion for summary judgment that T-Mobile failed to post notice of OFLA requirements. In support of that motion, plaintiff provided his own affidavit testimony that he "never saw any Oregon Family Leave poster or notice posted anywhere in or around the location that I worked in." Aff. J. Cameron, ¶ 10. Another T-Mobile employee also offered affidavit testimony that he "never saw any notice about family leave posted anywhere in the company." Aff. C. Sherman, ¶ 4. In defending plaintiff's motion for summary judgment, T-Mobile offered the declaration of the Assistant Human Resources Manager who testified that the OFLA posters have been posted near the employee lunch area since at least June 2000, and a guide to the OFLA which has been posted

Page 8 - OPINION

since at least 2002, and provided pictures of the posters. Dec. D. August-Sanchez, ¶ 13, 14, 15, Supp. Dec. T. Hanchett, Ex. K, L, M.

The fact that two individuals "never saw" any notice posted is insufficient to create a question of fact. Therefore, I find there is no genuine issue of material fact that T-Mobile complied with ORS 659A.180.

II. Common Law Wrongful Discharge

Plaintiff asserts that he was wrongfully discharged because T-Mobile counted one or more statutorily-protected absences against him in terminating his employment, and that T-Mobile retaliated against him for objecting to the unlawful consideration of protected absences in terminating his employment.

I previously denied plaintiff's motion for summary judgment on his common law wrongful discharge claim, finding that T-Mobile had raised genuine issues of fact for trial. Specifically, I found there were issues of fact as to whether plaintiff alleged that the leave at issue qualified as statutorily-protected leave and whether he protested T-Mobile's alleged decision to count protected leave against him. Furthermore, there was a dispute as to whether any alleged protected activity was a substantial factor in the termination decision.

T-Mobile now seeks summary judgment against plaintiff on his common law wrongful discharge claim. Plaintiff implies that because I found issues of fact existed on *plaintiff's* motion for summary judgment, T-Mobile needs to bring forth additional evidence to obtain summary judgment based on its own motion. Contrary to plaintiff's understanding, T-Mobile must simply point out the absence of any genuine issue of material fact, and plaintiff then has the burden to

Page 9 - OPINION

demonstrate through the production of probative evidence, that there remains an issue of fact to be tried.

T-Mobile contends that there is no evidence that the plaintiff's invocation of his OFLA rights was causally related to the decision to discharge plaintiff. T-Mobile points to the fact that even excluding any absences plaintiff asserts were due to a sick child, the record is "undisputed that his employment would have been terminated as a result of his absences on February 6 and 7, 2003." T-Mobile's Memorandum in Support of Motion for Summary Judgment, at 14.

An employee has a claim for the common law tort of wrongful discharge if he was fired for pursuing a statutory right related to his role as an employee. Goodlette v. LTM, Inc., 128 Or. App. 62, 65, 874 P.2d 1354 (1994). Thus, there is no common law right of action for discharges that violate the statutory right against discrimination but the common law tort does cover discharges caused by an employee's resistance to discrimination. Id. at 64-65.

In a wrongful discharge claim, the employee must establish a causal connection between a protected activity and the discharge. Estes v. Lewis and Clark College, 152 Or. App. 372, 381, 954 P.2d 792 (1998). The employee's protected activity must have been a substantial factor in the motivation to discharge the employee. In other words, the employer's wrongful purpose must have been a "factor that made a difference" in the discharge decision. Id.

T-Mobile now argues, and plaintiff does not rebut, that plaintiff's poor attendance warranted termination of plaintiff's employment under the 2003 attendance policy, even if I exclude every absence plaintiff contends was taken to care for sick children. Under the 2003 attendance policy, four unplanned absences over a period of six months could result in termination. Late arrivals counted as half of an unplanned absence. T-Mobile asserts, and

Page 10 - OPINION

plaintiff does not rebut, that plaintiff had the following five unplanned absences, none of which were protected under the OFLA: 8/13/02, 10/4/02, 10/12/02 (tardy), 10/17/02, 12/15/02 (tardy), and 2/6/03.[3]

Plaintiff responds that "[t]here is evidence that defendant's assertion that they did not include any protected leave in the decision to terminate is contrived and false. It is contradicted by the testimony of the decision makers." Plaintiff's Response to Defendants' [sic] Motion for Summary Judgment, at 11. Without citation, he points to the depositions of plaintiff's supervisors.[4] I gather that he refers to the following testimony of Denise Workman:

> Q: Since you were one of the managers, did you take into account Mr. Cameron's history of absences when you decided to terminate him?
> A: Yes.
> Q: So even beyond the occurrences marked in the written warning, you considered other absences, right?
> A: I looked at Jeremy's whole history.
> Q: And you took that into account?
> A: Yes.
> Q: Okay. And that history included documented time off for having a sick child, right?
> A: Yes.
> Q: And you took that into account when you decided to terminate him?
> A: Yes.

Workman's Depo., 71-72:18-8.

Plaintiff also argues that the fact that T-Mobile no longer has doctor notes he apparently submitted to the company following his absences is evidence of a pretextual reason for his

---

[3]Plaintiff also was absent on February 7, 2003, however, under the 2003 policy unplanned consecutive absences count as only one unplanned absence.

[4]I note that LR 56.1(e) absolves me of any independent duty "to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties." However, I have where feasible reviewed the materials submitted earlier by plaintiff in support of his motion for summary judgment.

Page 11 - OPINION

termination because those doctor notes could relate to plaintiff's children. He does not, however, assert that any additional absences other than those set forth in the Facts were due to the need to care for sick children.

The question here is whether the evidence, viewed most favorably to plaintiff, would permit a finding of a causal link between plaintiff's discharge and his protected activity. I find that even if T-Mobile considered absences plaintiff took for sick children in deciding to terminate him, plaintiff has not met his burden in showing that his use of protected leave was a "substantial factor" in deciding to terminate him.

I similarly am unpersuaded by plaintiff's claim that T-Mobile retaliated against him for objecting to the alleged consideration of protected absences in terminating his employment. Plaintiff apparently relies on two conversations he allegedly had with T-Mobile employees. The first conversation occurred following a meeting about the 2003 attendance policy in November 2002. Plaintiff and two co-employees asked their supervisor about how absences due to sick children would be handled under the new attendance policy. The supervisor allegedly confirmed that unplanned absences for sick children would count against employees. The second conversation occurred between plaintiff and his supervisor on February 7, 2003, the second day he called in sick. He allegedly said that he "thought it was terrible that it would still count it against me for taking care of the children at that time." Cameron's Depo. at 79.

The first conversation cannot be the basis for a wrongful discharge claim because it does not evidence plaintiff's opposition or resistance to the treatment of absences.

As for the second statement, T-Mobile points out that under the 2003 absence policy, consecutive absences were counted as a single absence, so this conversation took place after the

absence that resulted in plaintiff's termination. In addition, T-Mobile relies on the testimony of plaintiff's supervisor, Therese Prock, who testified that plaintiff would "most likely not" have been terminated had he not been absent on the 6th or the 7th–absences plaintiff has never claimed were due to the need to care for sick children–because "[i]f there were no further occurrences, there would be no reason to move forward to a termination." Prock's Depo. at 63.

The record simply does not support an inference that T-Mobile was motivated to retaliate against plaintiff because of his alleged invocation of OFLA protections. Plaintiff has failed to meet his burden of proof through the production of probative evidence which demonstrates that his protected activity was a substantial factor in T-Mobile's decision to terminate his employment. Accordingly, I grant T-Mobile's motion for summary judgment on plaintiff's common law wrongful discharge claim.

III. <u>Damages Available to Plaintiff Limited as a Matter of Law</u>

Since I grant T-Mobile's motion for summary judgment, I need not reach T-Mobile's alternative argument that plaintiff's claim for damages is limited by his own alleged misconduct.

## CONCLUSION

I grant T-Mobile's motion for summary judgment (#64) and dismiss the action with prejudice.

Dated this <u>    28th        </u> day of April, 2005.

       <u>  /s/ Garr M. King                     </u>
       Garr M. King
       United States District Judge